CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 09, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERRANCE LAMONT MOORE, ) | |
| Plaintiff, ) | Civil Action No. 7:24-cv-00437 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| UNITED STATES OF AMERICA, ) | Chief United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION**

Terrance Lamont Moore, a federal inmate acting *pro se*, brought this action against the United States of America pursuant to the Federal Tort Claims Act (FTCA). (Compl., Dkt. No. 1.) Moore alleges that he was injured by an employee of the United States Penitentiary located in Lee County, Virginia (USP Lee)[1] during a physical altercation between Moore and another inmate. The United States moves to dismiss the FTCA claim for lack of subject matter jurisdiction. (Dkt. No. 13.) Moore responded in opposition to the motion to dismiss. (Dkt. No. 24.) For the reasons stated below, this motion will be granted.

I.  BACKGROUND

**A. Plaintiff's Allegations**

Moore alleges that on September 30, 2023, at approximately 7:30 p.m., he was walking in the common area of his assigned housing unit in the A-unit. He was suddenly attacked by another inmate, who punched Moore in the back of his head. The impact caused Moore to drop to his knees. He covered himself to protect against further attack. Correctional officer J. Ledford entered the unit and shouted to "Get down!" Moore claims that he was already crouched on his knees and in a defenseless position and he was not resisting Ledford's

---

[1] Moore has been transferred to USP Coleman in Florida. (Dkt. No. 29.)

commands or engaging with the other inmate. Officer Ledford grabbed Moore around the arms and torso and yanked him up from the floor. Ledford then placed his foot against the back of Moore's right heel and pushed him forward while spinning him around with "extreme force." Moore heard bone snapping in his right lower leg and yelled, "you broke my leg!" Officer Ledford grabbed him by the waist and slammed him onto the ground. Moore heard his leg snap again, and he yelled out in pain. Ledford fell on top of Moore's back, and Moore landed on the concrete surface, striking his head and chest against the bricks. Moore was face down on the concrete floor until other officers arrived. An officer pulled Moore's hands behind his back and applied handcuffs. (Compl. ¶ 6, Dkt. No. 1.)

Officers lifted Moore and placed him in a wheelchair, transporting him to the infirmary. Officer Ledford entered the examination room where Moore was being assessed by medical personnel. Officer Ledford laughed and asked to receive a photo of Moore's ankle. He stated: "I thought you were joking about your leg"; "I didn't mean to slam you down so hard"; and "that must really hurt". (Compl. ¶ 7.)

Moore claims that he suffered a right trimalleolar ankle fracture[2] and malleolus fractures involving 50% of his right ankle. Moore also sustained injuries to the left side of his face, subconjunctival hemorrhaging and soreness and numbness in his left eye, and shooting pains in his left elbow to his left thumb. Moore underwent two surgeries to his right ankle that required the permanent placement of a titanium plate and screw insertions. He was in a wheelchair for six months. (*Id.* ¶ 8.)

---

[2] A trimalleolar fracture happens when someone breaks the lower leg sections that form the ankle joint and help move the foot and ankle. *See* https://my.clevelandclinic.org/health/diseases/21803-trimalleolar-fracture (last visited 5/28/25).

Moore brings tort claims for assault and battery under the Federal Tort Claims Act. He has also alleged a *Bivens* claim against Officer Ledford based on his constitutional right to be free from unreasonable seizures under the Fourth Amendment.[3] Moore seeks compensatory and punitive damages against the United States and against Officer Ledford.

The attachments to the complaint show that Moore submitted an administrative claim that was received on December 28, 2023. (Dkt. No. 1-1 at 1.) He claimed damages of $50,000. The claim was denied for the following reasons:

> You claim staff intentionally used excessive force against you in response to a incident in which you were fighting with another inmate. This is a constitutional claim. Constitutional claims are not cognizable under the Federal Tort Claims Act. In FDIC v. Meyer, 114 S. Ct. 996 (1994), the Supreme Court explained that to be actionable under the Tort Claims Act, a claim must allege that the United States would be liable to the claimant as a private person in accordance with the law of the place where the act or omission occurred. Because by definition federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right, the United States has not rendered itself liable under the tort claim provisions for constitutional tort claims.

(*Id.* at 2.)

## B. Facts in Support of Motion to Dismiss

The United States provided surveillance video of the September 30, 2023 incident (Dkt. No. 14-4, Ex. C) and declarations. The video shows significant discrepancies from the events as described in Moore's complaint.

Instead of the attack being initiated by the other inmate, the video shows that Moore physically initiated the altercation—approaching the inmate and shoving him. After this, the

---

[3] Officer Ledford was not named in the case caption, and he was not served with the complaint. Accordingly, counsel for the United States does not represent Officer Ledford and any claims against Officer Ledford in his individual capacity are not addressed in the government's motion. Even so, Moore's *Bivens* claim will be dismissed for the reasons stated later in this opinion.

other inmate shoved Moore back, pushing him to the floor. Moore attempted to get up from the floor, and the other inmate held Moore's arms as they pushed each other into the wall.

Moore and the other inmate were in a standing position, pushing each other against the wall as staff ran toward them. Officer Ledford and another officer ran toward Moore as Moore had the other inmate pushed against the wall. Officer Ledford grabbed Moore in an apparent effort to break up the fight. Another officer grabbed the other inmate less than a second later. Officer Ledford pulled Moore toward him and away from the other inmate as Moore resisted pulling off the other inmate. Officer Ledford turned himself and Moore to the right, away from the other inmate, and pulled himself and Moore to the ground. Officer Ledford kept Moore on the floor as he gained control of Moore's hands to place him in handcuffs, being assisted by another officer. Once Moore was in handcuffs, Officer Ledford kneeled next to Moore.

Pursuant to BOP policy, the incident was documented and reviewed by an after-action review committee. (Declaration of Corey Davis ¶¶ 7–9, Attachments A, B, Dkt. Nos. 14-2, 14-3.) An After-Action Review Team reviews all use of force incidents to determine compliance with the provisions of Program Statement 5566.07. (Davis Decl. ¶ 9.) Acting Warden C. Nunley, Associate Warden D. Waughen, Captain J. Bowles, and Health Services Administrator A. Rutherford reviewed the documentation and reports and determined that the "actions taken with respect to the use of force and/or restraints were reasonable and appropriate and have been reviewed with staff involved." (Attachment B.) Accordingly, it was determined that the actions by staff were appropriate, recommendations were noted to improve in the future, and no misconduct was discovered during the review process. (Davis Decl. ¶ 9.)

4

**C. Plaintiff's Response to Motion to Dismiss**

Moore submitted a response to the motion to dismiss that is sworn under penalty of perjury.[4] He contends that the government's factual challenge to jurisdiction should be rejected because it is based on a "self-serving analysis" of the video surveillance evidence. (Dkt. No. 24 at 1.)

Moore "vehemently disputes" the United States' interpretation of what takes place in the video. He reiterates many of the allegations in his complaint. His claim is that he was "suddenly attacked, without cause, by another inmate." As Moore initially sought to converse with that inmate, the inmate turned and punched Moore hard enough to cause Moore to drop to his knees. While Moore was still crouched on one knee, and as Officer Ledford entered the unit and yelled "Get Down,"[5] the other inmate stood over Moore as Moore "attempted to prevent" the inmate from further engagement. Then, when Officer Ledford entered the unit, he grabbed Moore from off the floor, swung him upward "with momentum" and "maliciously slammed" him to the ground with "extreme force," causing injury. (Dkt. No. 24 at 1–4.)

II.  ANALYSIS

**A. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The United States moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The plaintiff bears the burden of showing federal jurisdiction on a Rule 12(b)(1) motion. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case." *Johnson v. N.*

---

[4] Moore's complaint is not a verified complaint.

[5] The court notes that the video received by the court has no audio.

*Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012) (citing *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999)).

A defendant can challenge subject matter jurisdiction under Rule 12(b)(1) either by making a facial challenge that the allegations pled in the complaint are not sufficient to establish subject matter jurisdiction, or a factual challenge that the allegations establishing jurisdiction are not true. See *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The United States has made the latter type of motion. Accordingly, the court treats the allegations of the complaint as mere evidence and may consider matters beyond the pleadings without converting the motion to one for summary judgment. *Douse v. United States*, No. 5:24-CV-277-M-BM, 2025 WL 938845, at *6 (E.D.N.C. Jan. 23, 2025) (citing *Richmond*, 945 F.2d at 768). "The court may consider evidence beyond the scope of the pleadings to resolve factual disputes concerning subject matter jurisdiction." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

**B. Sovereign Immunity**

Under the doctrine of sovereign immunity, the United States is immune from suits seeking monetary damages, unless it consents to being sued through an act of Congress waiving immunity. *Dep't of Agric. Rural Dev. Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). Absent such a waiver of sovereign immunity, federal courts lack subject matter jurisdiction to hear claims against the United States. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Because waiver of sovereign immunity is jurisdictional, the party invoking federal jurisdiction—here Moore—bears the burden of establishing that the United States has waived its immunity. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

6

The FTCA provides a limited waiver of sovereign immunity. The FTCA states:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . .

28 U.S.C. § 1346(b)(1). Thus, the United States has consented to suit under the FTCA, permitting judicial review of FTCA claims based on the acts or omissions of government employees. *See Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995).

## C. Discretionary Function Exception

There are exceptions to the limited waiver, and the exception invoked by the United States in this case is the discretionary function exception. The text of the FTCA precludes "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Because FTCA liability is not available where an agency or employee of the United States performs a discretionary function, the FTCA does not constitute a waiver of sovereign immunity for tort claims against the United States based on the performance or nonperformance of a discretionary function, and such a suit "must be dismissed for want of subject matter jurisdiction under Rule 12(b)(1)." *Williams*, 50 F.3d at 305; *W.O. by O'Brien v. United States*, Case No. 7:24-cv-730, 2025 WL 1001165, at *6 (W.D. Va. Apr. 3, 2025).

The discretionary function exception applies when two factors indicate that a claim is based on the government's performance or nonperformance of a discretionary function: (1) "the challenged governmental conduct involves an element of judgment or choice" because no "statute, regulation, or policy prescribes a specific course of action" and (2) "the judgment was

7

one that the exception was designed to protect, namely a judgment based on considerations of public policy." *Rich v. United States*, 811 F.3d 140, 144 (4th Cir. 2015); *see also Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). For the exception to apply, both prongs must support the conclusion that the challenged governmental conduct was discretionary. *Rich*, 811 F.3d at 144. "[I]f an employee has a range of discretion to exercise in deciding to carry out an assigned duty, such acts are protected under the discretionary function exception and sovereign immunity is not waived." *Sharrer v. United States*, Case No. 7:18cv356, 2019 WL 1394376, at *6 (W.D. Va. Mar. 27, 2019).

Under the first factor, in determining whether the challenged conduct involves an element of judgment or choice, the court looks to whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has rightful option but to adhere to the directive." *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). By statute, the Bureau of Prisons (BOP) is required to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States," 18 U.S.C. § 4042, but there are no specific courses of action that are prescribed for responding to physical altercations between inmates. This general duty of care "does not mandate any particular conduct employees must engage in or avoid as a means of carrying out that duty." *Davis v. United States*, No. 7:10CV00005, 2010 WL 2754321, at *6 (W.D. Va. July 12, 2010). "Although the BOP owes a general duty of care to safeguard federal prisoners, to make available those articles necessary for maintaining personal hygiene, and to provide inmates an opportunity to shower regularly, the BOP retains considerable discretion to determine the means by which it will fulfill these duties." *Duga v. Warden, FCC Coleman-USP I*, 673 F. App'x 940, 942–43 (11th Cir. 2016).

As it pertains to the use of force, BOP regulations permit the use of force by staff by recognizing the inherent need for discretion to ensure the safety of prisoners. *See* 28 C.F.R. §§ 552.21(a) (providing that BOP "staff may immediately use force" to gain control of an inmate immediately and seriously threatening the safety of others), 552.22(b) (permitting the use of "only that amount of force necessary to gain control of the inmate"); *see also* BOP Program Statement 3420.12 at 9 (June 24, 2024) ("An employee may not use . . . any force beyond what is reasonably necessary to subdue or control an inmate.").[6] Even though the BOP "has a policy authorizing the use of force, correctional officers maintain discretion as to determining what situations require a physical force response and the extent of any such response." *Saucedo-Gonzalez v. United States*, Civil Action No. 7:07cv00073, 2007 WL 2319854, at *7 (W.D. Va. Aug. 13, 2007). Thus, the first factor—element of judgment or choice—favors application of the discretionary function exception.

Under the second factor—considerations of public policy—"decisions about when and how to intervene in an inmate fight are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." *Davis*, 2010 WL 2754321, at *7. "A correctional officer's decision as to how to respond to an inmate's aggressive and/or threatening behavior must balance the potential risk to the inmate during a physical confrontation as well as the potential security threat a violent and aggressive inmate poses to staff and other inmates." *Saucedo-Gonzalez*, 2007 WL 2319854, at *7. Thus, Officer Ledford's decision about using force to break up an inmate fight is grounded in decisions of public policy, and the second prong of the discretionary function exception applies. *See, e.g.*,

---

[6] https://www.bop.gov/policy/progstat/3420_012.pdf (last visited 6/3/25).

9

*Lancaster v. USP Hazelton*, 742 F. App'x 724, 725 (4th Cir. 2018) (affirming dismissal of assault claim based on discretionary function exception).

Moore's response, as noted above, focuses on his factual dispute with the United States' interpretation of the surveillance video. This dispute is not relevant to the court's analysis in considering whether the discretionary function exception should apply. It cannot be disputed, based on the video and on the allegations in Moore's complaint, that Officer Ledford acted in response to an altercation between Moore and another inmate. Officer Ledford's decision about whether and how to break up an inmate fight qualifies for the exception.

Moore also argues that Officer Ledford's actions were nondiscretionary because BOP Program Statement 3420.12 forbids an employee from using "brutality, physical violence, or intimidation towards inmates, or use any force beyond what is reasonably necessary to subdue or control an inmate." Moore argues that Officer Ledford went beyond what was "reasonably necessary" because Moore was severely injured, including a broken ankle. Yet the judgment about what is "reasonably necessary" in a particular situation is what makes the exception applicable, not the extent or seriousness of the resulting injuries. Moore further cites BOP Program Statement P5566.07 which explains that staff is authorized to "use force only as a last alternative after all other reasonable efforts to resolve a situation have failed," and [w]hen authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order."[7] Again, use of words such as "reasonable" and "necessary" demonstrates that BOP employees are not subject to mandatory, nondiscretionary language when contemplating the need for the use of force.

---

[7] https://www.bop.gov/policy/progstat/5566.07.pdf (last visited 6/4/25).

10

For the foregoing reasons, the discretionary function exception applies to Moore's claim against the United States, the United States has not waived its sovereign immunity, and the court lacks subject matter jurisdiction over this claim.

### D. Potential *Bivens* Claim

Moore's complaint can also be construed as alleging a claim against Officer Ledford in his individual capacity based on excessive use of force. In paragraph five of the complaint, Moore names Ledford as a defendant, and states that Moore is suing Ledford in his individual capacity. (Compl. ¶ 5.) Even though Ledford was not listed in the caption and was never served with process, the court can address the claim *sua sponte* pursuant to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915A(b)(1); *see also* 28 U.S.C. § 1915(e)(2) (permitting *sua sponte* dismissal, in a case where plaintiff is proceeding *in forma pauperis*, if a claim is frivolous or fails to state a claim on which relief may be granted).

The Supreme Court has recognized an implied right to damages from individual federal employees, acting under color of federal law, for violation of the Fourth Amendment. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). However, the Supreme Court has clearly held that there is no *Bivens* cause of action for an Eighth Amendment excessive force claim. *See Goldey v. Fields*, 606 U.S. 942 (2025). Accordingly, the court will dismiss this claim.

### III.  CONCLUSION

The court will issue an appropriate order granting the United States' motion to dismiss Moore's FTCA claim for lack of subject matter jurisdiction. The order will also dismiss plaintiff's *Bivens* claim against J. Ledford.

Entered: September 9, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge